UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-165 (JMC) |
| v. : | |
| : | |
| GIORGI MAMULASHVILI, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Giorgi Mamulashvili has pleaded guilty to two second-degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Mamulashvili to 30 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and consistent with the plea agreement in this case, $500 in restitution.

I.   **Introduction**

Defendant Giorgi Mamulashvili, a 27-year-old delivery driver and former security officer, and a permanent resident from the Republic of Georgia, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power

1

after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Mamulashvili pleaded guilty to violations of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). The government's recommendation is supported by Mamulashvili's decisions to: (1) enter the Capitol after seeing the eastern Rotunda doors be violently breached; (2) push past police lines; and (3) remain inside the Capitol building for nearly an hour, despite clear signs that he was not permitted to be there; and (4) Mamulashvili's inadequate sense of remorse for his actions.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Mamulashvili's crime support a sentence of 30 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

II.     **Factual and Procedural Background**

*The January 6, 2021, Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 18 (Statement of Offense).

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Mamulashvili's Role in the January 6, 2021, Attack on the Capitol*

On January 6, 2021, Mamulashvili, a resident of Brooklyn, New York, drove to the U.S. Capitol with an unidentified companion. He arrived around 2:00 p.m. and joined the crowd of people outside the U.S. Capitol building, near the landing outside the eastern Rotunda doors, on the east side of the Capitol. He took the time to record himself as the crowd gathered outside. Nearby, a small group of police officers tried to keep rioters out of the building, but they were overwhelmed by the size of the crowd. Rioters chanted and yelled at the police to let them inside. They assaulted officers and threw objects at them.



*Image 1: Mamulashvili outside near east Rotunda doors (Gov. Ex. 1, 00:00)*

At around 2:24 p.m., Mamulashvili sent two text messages that read, "Trying to enter" and, "They are shooting paper spry [sic]." Approximately two minutes later, a rioter approached the eastern Rotunda doors from the inside and used his shoulder to force them open. A single police officer tried to stop the rioters from entering, but he was overwhelmed by other rioters inside the building and forced away from the door. After rioters inside forced the door open—a feat made

more difficult due to the size of the crowd outside—they pulled a police officer through the door, then worked to clear a logjam of bodies outside. Moments later, rioters outside began to pour into the Capitol building, but police inside the Capitol managed to close the eastern Rotunda doors.

Outside, outnumbered police officers tried to prevent more rioters from entering the U.S. Capitol, but the doors were forced opened a second time at around 2:38 p.m. Five minutes later, Mamulashvili pushed past the police with his fist raised triumphantly in the air as he breached the eastern Rotunda doors. He surged forward with a group of rioters who forced the officers away from the doors. He walked around a police officer who was in his way.



*Image 2: Mamulashvili (yellow circle) pushing past officers (blue circles) (Gov. Ex. 02, 03:04)*



Image 3: Mamulashvili (yellow circle), enlarged insert (Gov. Ex. 02, 03:08)

Mamulashvili entered the Rotunda moments later. He was wearing white sneakers, a black balaclava mask, a sweatshirt with "BROOKLYN" emblazoned on the front, and "TRUMP 2020" flag draped over his shoulders like a cape. He was also carrying a varsity-style jacket. He had his smartphone in his hand as he tried to record and live stream himself.



Images 4, 5, and 6: Screenshots from Gov. Ex. 03 at 01:25, 02:22, 03:52, respectively

5

While in the Rotunda, other rioters called for people to head toward the Senate Chamber. Mamulashvili pumped his fist in the air and high-fived another rioter as he headed in that direction. He walked with other rioters toward the Senate Chamber and traveled as far as the hallway outside the Old Senate Chamber, where a line of police officers halted the rioters' advance. Other rioters pushed against the police line while officers prevented them from advancing toward the Senate Chamber. Mamulashvili recorded himself when he was in this area. Another person recorded him there when he draped a varsity-style jacket over his head.



*Image 7 (left): Screenshot from Gov. Ex. 04 at 00:01*
*Image 8 (right): Screenshot from Gov. Ex. 05 at 00:03*

Police deployed chemical irritants at the rioters and Mamulashvili left the area outside the Old Senate Chamber. At around 3:03 p.m., he returned to the Rotunda, and he remained there until police began moving rioters toward the eastern Rotunda doors. Mamulashvili had to be shoved

away from the police line and toward the east foyer. He lingered in the east foyer for several minutes before getting the attention of an officer and signaling that he wanted to leave. At around 3:31 p.m., Mamulashvili exited the building through the eastern Rotunda doors and descended the east stairs. Mamulashvili was in the building for approximately 48 minutes.



*Image 9: Screenshot from Gov. Ex. 14 at 00:16*

*The Charges and Plea Agreement*

On April 4, 2024, the United States charged Mamulashvili by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On April 30, 2024, pursuant to a plea agreement, Mamulashvili pleaded guilty to Count Three of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(D), and Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, defendant agreed to pay $500 in restitution to the Architect of the Capitol.

*Mamulashvili's August 12, 2024, Post-Plea Debrief*

Following discussions with defense counsel, the government interviewed Mamulashvili on August 12, 2024. Mamulashvili explained that he traveled to Washington, D.C., on January 6, 2021, intending to attend the "Stop the Steal" rally featuring then-President Donald J. Trump. He claimed that he had never attended a rally before and that he became aware of the rally through social media. The rally was already over when he arrived in the District, but he parked near the U.S. Capitol and joined the crowd gathered there. He claimed that he did not get close to police. When asked about the fact that he was pumping his fist as he entered the Capitol building, he explained that he was excited about being at the rally. And that he was doing whatever people around him were doing.

Mamulashvili was asked whether he believed that his actions were legitimate. He explained that at the time he did not believe he was doing anything wrong and that he was doing what other people were doing. He did express regret and stated that he respects law enforcement. When asked, he stated that he did not intend to engage in similar conduct in the future, noting that he wanted to stay out of trouble and that his ability to reside in the United States is very important to him. He expressed a continued willingness to cooperate with authorities.

Video footage shows that Mamulashvili was close enough to police officers at the eastern Rotunda doors to know that they were being overwhelmed. His text messages show that he knew that police were deploying chemical irritants at the crowd that he joined. He was near the Old Senate Chamber when police stopped the mob from advancing further by deploying more chemical irritants. And he was near a line of police officers who had to physically expel him and other rioters from the Rotunda. His statements during the debrief sought to minimize his conduct and he was closer to police than he cared to admit.

### III. Statutory Penalties

Mamulashvili now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078–79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution in this case.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Mamulashvili's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Mamulashvili, the absence of violent or destructive acts is not a mitigating factor. Had Mamulashvili engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Mamulashvili's case is that he breached the eastern Rotunda doors despite the clear and obvious efforts of police officers to close those doors. The police were outnumbered, and other rioters assaulted them while they tried to keep the crowd out. Mamulashvili's presence in the crowd of rioters directly contributed the dangerous situation that the police encountered, and he was part of a collective push that allowed many rioters to enter the building. In addition, police officers had to force him away from the Rotunda. He lingered inside the building despite the obvious signs that he was not supposed to be there.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' incarceration in this matter.

### B. Mamulashvili's History and Characteristics

As discussed in the PSR, Mamulashvili was born in the Country of Georgia and moved to the United States in 2016. ECF 19 ¶¶ 30–31. He is a permanent resident of the United States (a green card holder). ECF 19, p.3. During the change-of-plea hearing held on April 30, 2024, and prior to pleading guilty to the two offenses discussed here, Mamulashvili acknowledged he could face immigration-related consequences because of his guilty plea.

He has no criminal record, once studied at John Jay Criminal Justice University, and he was employed for several years in private security. ECF 19 ¶¶ 23–28, 50, 53–54. Mamulashvili reported to the PSR writer that he will be unemployed at the time of his sentencing, ECF 19 ¶ 51, and that he does not have any assets, ECF 19 ¶ 57. Mamulashvili has been compliant with his conditions of pre-trial release.

As someone who was working in private security in 2021 and who studied criminal justice, Mamulashvili's conduct reflects a profound betrayal of the basic principles of law and order to which he was exposed. His decision to storm the U.S. Capitol despite seeing an overwhelmed

y

police force is disturbing considering his self-proclaimed respect for law enforcement and his profession at the time of the attack. The fact that Mamulashvili may no longer be employed (in that profession or otherwise) does not mitigate his conduct. He should have known better. In this case, Mamulashvili's conduct demonstrates a very real need for specific deterrence in the form of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

While Mamulashvili has accepted responsibility for his actions by pleading guilty, nothing in the PSR indicates that he has expressed remorse for his role in the attack of the U.S. Capitol. That day stands out as one of the most horrific acts of political violence in American history. It must be impressed upon the defendant that political violence in any form is unacceptable in the United States. With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Mamulashvili in a manner sufficient to deter him specifically, and other generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Mamulashvili based on his

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Mamulashvili has pleaded guilty to Count Three of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(D) and Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who (like Mamulashvili) entered the building after having witnessed unmistakable signs of a violent riot and celebrated the riot while they were inside.

In *United States v. Sarko*, 21-cr-591 (CKK), the judge sentenced a defendant to 30 days' incarceration, 36 months' probation, and $500 restitution for violating 40 U.S.C. § 5104(e)(2)(G). Sarko spent 20 minutes inside of the Capitol after observing the violent entry of other rioters. He entered the office of Senator Merkley, a sensitive area of the building. He posted video from his breach of the Capitol on social media and celebrated violence that occurred during the riot. Sarko received a sentence of 30 days of incarceration with a term of 36 months' probation. While Mamulashvili did not enter a sensitive area of the building, he was inside the Capitol for a longer

13

period (48 minutes). Mamulashvili was also celebrating during the riot and trying to live stream his actions.

In *United States v. Hendrix*, 21-cr-426 (CKK), the judge sentenced a defendant to 30 days' incarceration and 36 months' probation for violating 40 U.S.C. § 5104(e)(2)(G). Hendrix was in the Capitol for approximately 90 seconds and considered re-entering the building. He received a sentence of 30 days' incarceration and 36 months' probation. Like Mamulashvili, Hendrix breached the Capitol through the eastern Rotunda doors and could not have overlooked police efforts to stop rioters from entering the building. Unlike Hendrix, Mamulashvili spent much more time inside the Capitol and advanced much further into the building.

In *United States v. Ortiz*, 22-cr-82 (JMC), this court sentenced a defendant to two months' home confinement, 12 months' probation, 100 hours of community service, and $500 restitution for violating 40 U.S.C. § 5104(e)(2)(G). Like the instant case, Ortiz chose to enter the Capitol after witnessing unmistakable signs that the mob was engaged in a violent riot, joined a large group of rioters inside the Rotunda, and pressed deeper into the building. Unlike this case, Ortiz entered and exited the Capitol multiple times within one hour, he incited others to move further into the building, he shone a strobe flashlight at police while they were battling rioters, and later boasted about "blind[ing] the cops." Ortiz received 2 months' home detention and 12 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its

14

own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.     Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Mamulashvili must pay $500 in restitution, which reflects in

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

part the role Mamulashvili played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Mamulashvili's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 82.

## VI.   Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G) subject him to a statutory maximum fine of $5,000 for Count Three and $5,000 for Count Four. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine.

## VII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence defendant to 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution. Such a sentence promotes respect for the law and deters future crime by imposing

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

restrictions on Mamulashvili's liberty because of his behavior, while recognizing his acceptance of responsibility for his crime.

                                                   Respectfully submitted,

                                                   MATTHEW M. GRAVES
                                                   United States Attorney
                                                 D.C. Bar No. 481052

                       By:     */s/ Carlos A. Valdivia*
                                                 Carlos A. Valdivia
                                                 D.C. Bar No. 1019242
                                                 Assistant United States Attorney
                                                 601 D Street NW, Fifth Floor
                                                 Washington, D.C. 20530
                                                 E-mail: Carlos.Valdivia@usdoj.gov
                                                 Telephone: (202) 252-7508